[No. 10751. Department One. March 28, 1913.]

MABEL V. McGILL, *Plaintiff*, v. NETA BROWN *et al.*,
*Defendants*, JAMISON & COMPANY, *Respondent*,
A. K. ISHAM, *Receiver etc., Appellant.*[1]

ASSIGNMENTS—TITLE—WHEN PASSES—RECEIVERS—RIGHT TO AC-
COUNT ASSIGNED PRIOR TO APPOINTMENT. Where a sale of pig iron
was made to a manufacturer of iron posts, holding a contract with
a city for posts, on the security of an assignment by the manu-
facturer of its claims against the city, which assignment was ac-
cepted by the city, title to the city warrant in payment of the posts
passed to the seller of the iron; and a receiver of the manufacturer
would not be entitled to the warrant by reason of the fact that part
of the posts were delivered by him, or that an insignificant part of
the work thereon was performed after his appointment as receiver;
as the receiver would have no better title than the assignor of the
warrant.

RECEIVERS—REMEDIES AGAINST—PROCEDURE. Where a receiver
wrongfully obtained possession of a warrant that had been assigned
by the receiver's insolvent, the regular procedure is for the assignee
to obtain an order in the receivership case requiring the receiver to
return it or its proceeds.

Appeal from an order of the superior court for King
county, Myers, J., entered March 27, 1912, in favor of the
claimant, in a proceeding against a receiver for money re-
ceived, after trial on the merits to the court. Affirmed.

*Shank & Smith*, for appellant.

*Edwin C. Ewing*, for respondent.

MOUNT, J.—This proceeding was brought by E. P. Jami-
son & Company, a corporation, against the receiver in the
case of McGill v. Brown et al., to require the receiver in that
case to pay over to E. P. Jamison & Company the proceeds
of a warrant, amounting to the sum of $425.08, wrongfully
collected by the receiver. The trial court, after hearing the
evidence, made the order as prayed for. The receiver has
appealed.

[1]Reported in 130 Pac. 1142.

There is substantially no dispute upon the facts, which are as follows: On May 4, 1910, Neta Brown, Florence C. Dawson and C. N. Dawson were copartners, doing business under the name of the West Coast Iron Works. On that day the copartners executed a mortgage covering all the assets of the company, to secure the payment of a certain sum of money. The descriptive clause in the mortgage concluded as follows: "And all accounts receivable now forming or hereafter to become a part of the business and assets of the said West Coast Iron Works." Nearly a year later, on to wit, May 25, 1911, the West Coast Iron Works was awarded a contract for the construction and delivery of twenty complete sets of police post castings to the city of Seattle for the price of $480. Thereupon the West Coast Iron Works desired to purchase from E. P. Jamison & Company the pig iron necessary to construct these police posts. The Jamison Company refused to sell their iron without security for the purchase price. The West Coast Iron Works then agreed to, and did on July 3rd, 1911, assign its claim against the city on account of the posts to the Jamison Company. The city accepted the assignment and placed the same on file in the comptroller's office on July 6, 1911. Thereafter the West Coast Iron Works completed the posts and delivered a part thereof to the city. Afterwards, on September 16, 1911, Mabel V. McGill, the assignee of the mortgage first above noticed, brought an action to foreclose the mortgage, and in that action A. K. Isham was appointed receiver of all the assets of the West Coast Iron Works. After the receiver was appointed, the remainder of the posts were delivered to the city. There is some slight dispute whether the posts were entirely completed prior to the appointment of the receiver. If anything was done thereon by the receiver, it was insignificant, being only a part of a day's work by one man. The receiver thereupon demanded and received the warrant in payment of the posts, from the city, and collected the money

thereon, $480. He refused to pay the Jamison Company the amount due for the iron, $425.08.

Appellant argues that the respondent had no lien or claim upon the posts, and no right to demand that the receiver furnish the posts to the city; that the receiver, having furnished the posts, was entitled to collect the pay therefor, and that, if respondent had any claim to the proceeds, it was its duty to intervene in the action and set up its claim. There is no merit in any of these positions. It seems too plain for argument that the city warrant, or the proceeds of the contract, never became an asset of the West Coast Iron Works, because it never came into possession of the West Coast Iron Works. Their right to the warrant had been assigned and the assignment had been accepted by the city before the posts were delivered or manufactured, and long before the receiver was appointed. The respondent never claimed any lien upon the posts themselves. It rested upon its claim to the warrant, which had been assigned to it. If the receiver had not been appointed to take over the assets of the West Coast Iron Works, that company could not have reasonably claimed the warrant from the city, after the posts were delivered, because of this previous assignment. The receiver took no greater interest in the estate than the West Coast Iron Works had at the time of the appointment of the receiver. High, Receivers (4th ed.), § 440; 34 Cyc. 191, 193. This warrant had been assigned to the respondent by a valid and binding assignment, long prior to the appointment of the receiver. When the receiver demanded the warrant from the city, he had no right thereto, nor to the funds which he derived therefrom. It is true, a few of the posts were delivered to the city after the receiver was appointed and some work done upon the posts, but this was done in accord with the contract, and did not alter the right of the respondent to the warrant the right to which had previously passed, and the receiver had notice of that fact. The receiver obtained the warrant by artifice—not necessary to discuss—and wrongfully; under

a misapprehension of his duties, no doubt but none the less wrongfully. He was bound to return it, or the proceeds by order of the court appointing him, to the person rightfully entitled to it. The procedure adopted was regular. 34 Cyc. 422; High, Receivers (4th ed.), § 299; (3d ed.), § 254b.

The judgment is therefore affirmed.

CROW, C. J., CHADWICK, GOSE, and PARKER, JJ., concur.