[No. 18997. Department Two. April 2, 1925.]

F. J. LUNDQUIST et al., *Appellants*, v. OLYMPIA NATIONAL BANK et al., *Respondents.*[1]

SALES (176)—CONDITIONAL SALES—RECORDING—PRIORITIES — DE-LIVERY AND POSSESSION—EXECUTION OF CONTRACT. A conditional bill of sale of a mill and its machinery, executed January 3, 1922, and duly filed January 5, 1922, is not absolute as to creditors, under Rem. Comp. Stat., § 9767, as provided if it is not filed within ten days after the vendee takes possession, on the theory that the vendee took possession on December 3, 1921, when the vendors bought the property at a mortgage foreclosure sale, where it appears that the conditional vendee had been in possession prior to such foreclosure sale, and there had been no attempt to take physical possession after foreclosure by the sheriff or purchasers, pending negotiations for the conditional sale, which was finally consummated January 3, 1922.

SALES (167-1)—CONDITIONAL SALES—PROPERTY COVERED—ACCESSIONS. Upon a conditional sale of a mill and its equipment, renewals or replacements of machinery, repairs or betterments, and

[1]Reported in 234 Pac. 453.

improvements in the nature of accessions that go with the plant, belong, on forfeiture of the contract, to the conditional sales vendors; but a safe, typewriter, office desk, chairs and furniture, afterwards purchased by the vendee are not subject to the conditional sales contract.

SALES (177)—CONDITIONAL SALES—OPERATION AND EFFECT AS TO THIRD PERSONS. Upon an issue as to the assets of an insolvent, in a controversy between the vendor in a conditional sale to the insolvent, and the insolvent's creditors, evidence of a prospective agreement discussed prior to the making of the conditional sale, but never consummated, is inadmissible.

Cross-appeals from a judgment of the superior court for Thurston county, Wilson, J., entered November 26, 1923, in favor of certain creditors, in proceedings to determine the priority of claims against an insolvent, after a hearing before the court. Modified on plaintiff's appeal.

*E. N. Steele* and *James C. McKnight,* for appellants.

*Troy & Yantis,* for respondents and cross-appellants.

*John S. Lynch* and *A. W. Tyler,* for respondents on cross-appeal.

MITCHELL, J.—The Olympia Westside Lumber Company, a corporation, was engaged in the manufacture of lumber in the city of Olympia in 1920 and 1921. It became indebted to Hugh Ross and the Olympia National Bank, as evidenced by its several promissory notes to each. A mortgage was given to each by the Westside Lumber Company on its property to secure the payments of the notes. In March, 1921, it executed and delivered to the Olympia Fir Lumber Company, a corporation, a conditional sale contract of the mill plant and property and put the latter named company in possession of it. The Olympia Fir Lumber Company thereafter operated the business. In September, 1921, the executor of the Hugh Ross estate commenced an action to foreclose its mortgage. Among others,

the Olympia Westside Lumber Company, the Olympia National Bank and the Olympia Fir Lumber Company were made defendants and were served with summons and complaint. Such proceedings were had in the case that the Olympia Westside Lumber Company and the Olympia Fir Lumber Company were both adjudged to be in default, neither of them having made or entered any appearance in the case. A judgment on the notes and foreclosing the mortgages was entered in favor of the executor of the Hugh Ross estate and in favor of the Olympia National Bank. All of the property was sold to the judgment creditors by the sheriff on a special execution sale on December 3, 1921, the sheriff giving a bill of sale therefor.

On October 4, 1921, the Olympia Fir Lumber Company, to secure advancements made and to be made, which were to be evidenced from time to time by promissory notes, for the purpose of purchasing logs by the mortgagor, entered into and delivered to the Olympia National Bank its mortgage on its property as follows:

"All of the sawed lumber and timbers at the mill of mortgagor, and in its yards or on its dock; and all lumber to be cut by the said mill, and stored in its yards or on its docks; and all logs in the said company's booms, at the said mill; and all logs to be placed therein from time to time, during the life hereof, it being the purpose of this mortgage to cover all logs, lumber or timbers, cut or to be cut, in boom or to be placed therein, so long as this mortgage subsists."

On April 10, 1922, the Olympia Fir Lumber Company executed and delivered its second mortgage to the Olympia National Bank to the same general effect and on the same property as mentioned and described in the first mortgage. Both mortgages were duly acknowledged and promptly placed of record in the office of the county auditor.

In the meantime, under date of January 3, 1922, the executor of the Hugh Ross estate and the Olympia National Bank, who were purchasers at the sheriff's sale in the foreclosure suit against the Olympia Westside Lumber Company entered into a conditional sale contract with the Olympia Fir Lumber Company whereby they agreed to sell, and it agreed to buy, the mill property described as follows:

"One Allis Chalmers Bank Mill; carriage Feed Engine, Live Rolls, Log Haul, one Erie Engine, all shafting and pulleys, all machine shop machinery, consisting of lathes, drill, press, grinder, key, seater, power hack saw, motor and shafting pulleys in connection therewith, one 6x9 Berlin plance; filing room machinery, consisting of gummer, grinder, swage emery wheels, lap grinder, all tools, bank saws, wench, conveyor, linings; pipe gear, blower, pipe, and cyclone nigger, water pump, log burner, all blacksmith tools, including anvil, vise, tongs, hammers, blower used in connection therewith, conveyor chains, jew chains, and drives in connection therewith, 9800 red brick; wharf and saw mill buildings, located on Block 356 of Olympia Tide Lands, Thurston County, Washington. Also all lumber purchased by the parties of the first part herein at execution sale on the — day of November, 1921."

The price agreed on, $42,400, was to be paid by installments as set out in the contract, which contained the usual forfeiture clause at the election of the vendors upon default in making the payments. This contract was duly filed of record in the county auditor's office on January 5, 1922. Payments were not made as required by the terms of the contract, and written notice of intention to forfeit, and thereafter written notice of forfeiture, according to the terms of the contract, were given and served by the executor and the bank on the Olympia Fir Lumber Company.

On May 28, 1922, the present action was commenced against the Olympia Fir Lumber Company by the

Olympia National Bank on promissory notes payable to the bank and to foreclose the two mortgages that had been given by the Olympia Fir Lumber Company. A receiver was applied for and appointed on the ground of the insolvency of the Olympia Fir Lumber Company. The defendant was served with summons and complaint and thereafter adjudged to be in default. Upon proof taken at the trial, judgment was entered on the notes and foreclosing the mortgages in the sum of $19,368.68, including interest and costs, with directions that the mortgaged property be sold either in the manner provided by law for the sale of mortgaged property or that the receiver sell the same in the ordinary course of administration of the insolvent estate, and the proceeds applied on the judgment.

Thereupon the receiver filed his duly verified petition, alleging that a large number of claims had been presented and filed concerning the rank of which he was not advised, and praying for an order declaring the status of all such claims with reference to their priorities. On a day appointed the parties, including creditors, appeared and introduced evidence as to their rights. At the same time there was injected into the hearing, apparently with the consent of all parties, the question of what, if any, property at the mill was not covered by the judgment of foreclosure. It was determined, among other things, that subject to the payment of taxes and industrial insurance, the judgment in favor of the bank in the foreclosure of its mortgages took precedence over other creditors other than certain labor claims, identified and described in the order or judgment, in and to all the property of whatever kind belonging to the Olympia Fir Lumber Company situate at and used in connection with the plant, and that all of such property was not assets in the hands of the receiver for the payment of other

claims. A number of the parties gave notices of appeal, but those only who have perfected and presented their causes on appeal and made any appearance here are the receiver and a number of unsecured creditors who joined with the receiver, and the Olympia National Bank which appeals from that portion of the judgment giving priority to the labor claims over its mortgage foreclosure judgment.

On behalf of the receiver and the creditors who joined in the appeal, three contentions are made. First, that the conditional sales contract by the bank and the executor of the Ross estate to the Olympia Fir Lumber Company, which was reduced to writing and signed on January 3, 1922, was absolute as to creditors, and that the property therein described, or that portion of it still on hand, constitutes assets in the hands of the receiver. The argument is that, when the bank and the executor bought the property at sheriff's sale on December 3, 1921, in the foreclosure suit against the Olympia Westside Lumber Company, they then delivered possession of it pursuant to agreement and sale to the Olympia Fir Lumber Company, and that their failure to file or record their conditional sale contract until January 5, 1922, made the sale absolute as to creditors, under § 3790, Rem. Comp. Stat. [P. C. § 9767], requiring a memorandum of such sale to be filed in the auditor's office within ten days after the vendee takes possession.

The facts in the case are that, on and prior to December 3, 1921, the Olympia Fir Lumber Company was and had been in possession of the property under its conditional sales contract of March, 1921, with the Olympia Westside Lumber Company, and on December 3, 1921, and thereafter no attempt whatever was made by the sheriff or by the bank or the executor to dispossess or dispute the physical possession of the prop-

erty by the Olympia Fir Lumber Company. There was on that day no dispossessing of, or the giving of possession to, the Olympia Fir Lumber Company. True, there is evidence of some negotiations prior to that date concerning a sale to be made by the bank to the lumber company in the event the bank purchased at the sheriff's sale, and after the sheriff's sale such negotiations continued. At the same time, the bank and executor were trying to sell to others. Negotiations continued with the lumber company, prices and terms were proposed and revised from time to time during the month of December and until the contract was finally drawn and signed on January 3, 1922. Until that time there had been no meeting of the minds of the parties, no price or terms agreed on, no contract entered into, no sale made nor any possession given. The trial court so stated in passing on the facts, and we find that view abundantly sustained by the evidence.

Second, it is contended that the court erred in not finding and holding that certain property acquired and installed by the Olympia Fir Lumber Company, and particularly that acquired after the company bought and took possession under the conditional sale contract with the executor and the bank, was not subject to the bank's mortgage or the conditional sale contract, but was the property of the receiver for the benefit of creditors. The record on this feature of the case, and generally, is rather voluminous, and without detailing the evidence, we content ourselves with the statement that a careful consideration of the abstract and supplemental abstract of the evidence shows that the property with reference to which such claim is made, with certain exceptions to be mentioned later, consists of renewals or replacements of machinery, repairs or betterments and improvements in the na-

ture of accessions that go with the plant, as against the one who places them in the plant while he is using the property under a conditional sale contract. 24 R. C. L., Sales, p. 477, § 771. The exceptions referred to consist of certain office furniture, viz.: one safe, one desk, one typewriting machine, three chairs, one stool, one combination counter and glass shelving underneath, and one filing case. These articles are not fairly within the mortgage to the bank, nor within the conditional sale contract made by the executor and the bank to the company, nor are they accessions to the plant under the rule above referred to.

Third, it is contended that the court erred in sustaining objections to testimony of two witnesses offered on behalf of the appellants to the effect that the witnesses on behalf of the Olympia Fir Lumber Company, in September, 1921, had a conversation with the president of the bank in which he agreed that he would if possible, buy the mill property at the then approaching sheriff's sale and turn it over to the Olympia Fir Lumber Company on conditional sale contract. We think there was no error in rejecting the testimony offered. The bank did not purchase at the sheriff's sale. The bank and the executor of the Ross estate were joint purchasers at that sale. Again, the offered testimony related to a prospective understanding, which has already been referred to hereinbefore, and, as already observed, after the date of the sheriff's sale the parties continued their negotiations and never did agree on either price or terms until January, 1922, as shown by all the testimony, including that given by the officers of the Olympia Fir Lumber Company.

On the appeal of the bank from that portion of the judgment preferring certain labor liens over the mortgage foreclosure judgment, the record has been exam-

ined as presented on the appeal, and we find no error in this respect.

The judgment will be modified by the lower court by eliminating from the list of property subject to the foreclosure judgment the office furniture hereinbefore described. In all other respects the judgment is affirmed.

TOLMAN, C. J., MACKINTOSH, HOLCOMB, and PARKER, JJ., concur.