[No. 19319. Department Two. March 1, 1926.]

NATIONAL BREAD WRAPPING MACHINE COMPANY,
Respondent, v. C. A. CROWL, as Receiver of
Sunshine Bakeries, Incorporated,
Appellant.[1]

[1] SALES (175, 176)—CONDITIONAL SALES—TIME FOR RECORDING—
FORM OF CONTRACT—SUFFICIENCY. A preliminary contract for
the sale of machines, which provided for setting up the machines
on trial and that conditional bills of sale thereof shall not be
executed until the machines were in working order, cannot dis-
pense with the requirements of Rem. Comp. Stat., § 3790, that
the bill of sale be filed within ten days after the taking pos-
session by the vendee, in order to be valid as to bona fide pur-
chasers and creditors; since to so hold would defeat the rights
of creditors and do violence to the words and intent of the act.

Appeal from a judgment of the superior court for
King county, Tallman, J., entered November 6, 1924,
upon findings in favor of plaintiff in an action of
replevin, tried to the court. Reversed.

Battle, Hulbert, Gates & Helsell and Edward G.
Dobrin, for appellant.

Ivan E. Merrick, Walter S. Osborn, and McClure &
McClure, for respondent.

MAIN, J.—This is a replevin action brought by the
plaintiff for the purpose of recovering the possession
of two bread wrapping machines. The action was tried
to the court without a jury, and resulted in findings
of fact, conclusions of law and a judgment sustaining
the plaintiff's right of recovery, from which the de-
fendant appeals.

The appellant is the receiver for the Sunshine
Bakeries, a corporation organized under the laws of
this state. This corporation was engaged in the manu-
facture and sale of bread in the city of Seattle. The

[1]Reported in 243 Pac. 840.

respondent is a New Hampshire corporation engaged in the manufacture and sale of bread wrapping machines. On July 31, 1923, the respondent then having two bread wrapping machines in storage in Seattle, a contract was entered into between it and the Sunshine Bakeries which was in words and figures as follows:

"Seattle, July 31, 1923.
"Sunshine Bakeries Corporation,
Seattle, Washington.
Gentlemen:
"The National Bread Wrapping Machine Company hereby makes the following proposal:
"We offer to sell to your Company two bread wrapping machines, Nos. C B 329 N and C 861 N, for the sum of Six Thousand ($6,000) Dollars, $1,000 to be paid at the time machines are installed, and the balance of $5,000 to be paid in ten successive instalments of $500 each, at six per cent. interest, said notes to be dated the day installation is completed and the first payment of $1,000 is made; said notes to be covered by a conditional bill of sale. Payment to be made, notes and conditional bill of sale executed when machines are in running order.

"Respectfully submitted,
"National Bread Wrapping Company Co.,
"By O. L. Dramer.

"We hereby accept the foregoing proposal and agree to pay the sum of $1,000 upon installation of machines, and we further agree to execute the ten promissory notes and the conditional bill of sale at the time the machines are installed, and in running order.
Dated Seattle, Washington, July 31, 1923.
"Sunshine Bakeries Corporation,
"By S. B. Asia,
"President."

After this contract was entered into the machines, in a knocked down condition, were delivered to the purchaser. Soon thereafter a mechanic came from San Francisco to set them up. At the time of their delivery

the machines were in all respects complete, except that they had not been set up. No parts remained for future delivery. The exact time when the machines were set up and ready to be operated does not clearly appear, but under any view of the testimony this was prior to September 15, 1923. After the machines were set up, it was found that they could not be operated successfully without a particular kind of paper, which the Sunshine Bakeries did not then have. It ordered a quantity of this paper, and the first delivery, a small quantity, was made on October 25 following. With this paper the machines operated successfully. They had from time to time been operated with other paper to a limited extent, but did not with that paper give satisfaction. On November 9, a sufficient quantity of the particular kind of paper required was received, so that the machines could be operated whenever needed. On November 19, 1923, a conditional bill of sale in usual form was executed by the Sunshine Bakeries, and on that day was properly filed for record. The corporation at this time was insolvent, and soon thereafter went into the hands of the receiver. The respondent claimed the right to retake the machines under its conditional bill of sale. This the appellant, the receiver who represented the creditors, resisted, and the trial resulted as above indicated.

The question is whether the conditional bill of sale was filed in time.

Section 3790, Rem. Comp. Stat., provides:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all *bona fide* purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten

days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides.''

It will be observed that, by this statute, all conditional sales of personal property, where possession is placed in the vendee, shall be filed in the auditor's office within ten days after the taking of the possession by the vendee.

[1] In the present case, from the facts stated, it appears that the machines were delivered to the Sunshine Bakeries on or about July 31, 1923, and they continuously remained in the possession of that company thereafter. The force of the statute is sought to be avoided by the respondent by taking the position that the contract of July 31 was only preliminary, and that it called for other negotiations between the parties; in other words, that it was not an enforcible obligation, as it would be necessary for the minds of the parties to meet upon other matters not covered by it before the conditional sales contract could be executed. That contract contained an offer to sell by the respondent and an unequivocal acceptance by the Sunshine Bakeries corporation. It specified the property sold, the purchase price and the terms of payment. It was apparently intended by the parties to be a binding agreement at the time it was made.

In *Loewi v. Long*, 76 Wash. 480, 136 Pac. 673, it was held that a contract for the sale of a hop crop is consummated by letters and telegrams, although the parties had in mind the subsequent signing of a more formal contract, where it appears that the subject-matter had been agreed upon, the terms stated in the informal writings, and the parties intended a binding

agreement prior to the execution of the formal contract. It was there said:

"To determine whether or not a contractual relation has been established by informal writings, such as letters and telegrams, where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire, (a) whether the subject-matter has been agreed upon, (b) whether the terms are all stated in the informal writings, and (c) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. If the subject-matter is not in dispute, the terms are agreed upon, and the intention of the parties plain, then a contract exists between them by virtue of the informal writings, even though they may contemplate that a more formal contract shall be subsequently executed and delivered."

The preliminary contract in the present case was more formal than that which the court was considering in that case, and under the holding there made we must conclude that the contract of July 31 was a binding obligation.

It will be unnecessary to review the argument of the respondent, because it is based largely, if not entirely, on the assumption that this preliminary contract was not a binding obligation. It is true that the contract provides that the conditional bill of sale shall not be executed until the machines are in running order, but this does not prevent the contract being a binding obligation from its inception. If a preliminary contract of this kind can be made, the property covered by it delivered to the possession of the purchaser, months elapse before the conditional bill of sale is executed and filed, and the rights of creditors thus defeated, the mandatory requirements of the statute would be of little avail. To so hold would do violence not only to the words of the statute but to its intent and purpose.

The effect of the statute as a protection to creditors cannot be avoided by an agreement of the parties to the sale of an article, providing that a conditional sale contract shall not be executed until it is in running order. Under the statute there is no escape from the holding that, in order to secure its protection, it was necessary that the conditional bill of sale be filed within ten days after the possession of the machines was delivered to the Sunshine Bakeries. In *Worley v. Metropolitan Motor Car Co.,* 72 Wash. 243, 130 Pac. 107, it was said:

"So far we have treated this case as appellant assumes it to be, but it may be seriously questioned whether appellant has in fact a conditional sale contract at all. It is not certain that the contract was signed within ten days after possession was given over to the vendee. If it was not, appellant can claim no rights under its contract."

The case of *Anderson v. Langford,* 91 Wash. 176, 157 Pac. 456, and other like cases, where it has been held that upon delivery of the principal parts of a machine, substantial parts being missing at the time and such parts were delivered within reasonable dispatch and there was no bad faith, the filing of a conditional sales contract within ten days after the delivery of the completed machine was within time, have no application to the facts in the present case.

The judgment will be reversed, and the cause remanded with direction to the superior court to dismiss the respondent's action, and enter a judgment in favor of the appellant "for a return of the property, or the value thereof in case a return cannot be had, and damages for taking and withholding the same."

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.