[No. 20024.  *En Banc.*  August 12, 1927.]

GRUNBAUM BROTHERS FURNITURE COMPANY, INCORPO-
RATED, *Appellant,* v. HUMPHREY INVESTMENT
CORPORATION *et al., Respondents.*[1]

[1] SALES (176, 178)—CONDITIONAL SALES—RECORDING—EFFECT AS
NOTICE. A conditional sales contract reciting that the articles
had been delivered to the purchaser in November, is not con-
structive notice to a *bona fide* purchaser in good faith where it
was not recorded until the following January; even as to part
of the articles in fact delivered under the contract within ten
days of the recording of the instrument, as required by Rem.
Comp. Stat., § 3790.

[2] SAME (176, 178). In such a case, the doctrine of continuing
deliveries of parts of a single machine cannot be applied, where
the articles sold were itemized and a price fixed and agreed
upon for each, and where the contract recited the delivery of
all the articles at the time of its execution; since the contract
must speak the truth to be constructive notice.

Appeal from a judgment of the superior court for
King county, Douglas, J., entered January 8, 1926,
upon findings in favor of the defendants, in an action
of replevin, tried to the court. Affirmed.

[1]Reported in 258 Pac. 517.

*C. A. Holtz* and *Florence Mayme Hickey* (*Robert D. Hamlin,* of counsel), for appellant.

*Hugh M. Caldwell, Robert H. Evans,* and *John P. Lycette,* for respondents.

*Melville Monheimer, amicus curiae.*

MITCHELL, J.—After the decision in this case, reported in 141 Wash. 329, 251 Pac. 567, a rehearing was granted and, while we adhere to an affirmance of the judgment appealed from, some further discussion of the case may be had. We repeat, in a general way, the facts set out in the former opinion and mention more in detail some of the facts therein referred to.

The Humphrey Investment Corporation, a corporation, being the owner of property at the corner of Second avenue and Blanchard street in the city of Seattle, entered into a contract with the Great Northern Construction Company by which the construction company agreed to build and deliver, at its expense, and it did build and deliver, an apartment house known as the Humphrey Apartments, according to plans and specifications that included linoleum and carpets to be laid on certain of the floors and corridors of the building. The construction company made arrangements with Grunbaum Brothers Furniture Company, Inc., to furnish the linoleum and carpets. The furniture company supplied the linoleum on open account and laid it on the floors, for which thereafter, in the month of October, 1923, it made demand upon the construction company for payment. The furniture company, not receiving pay and intending to furnish carpets, entered into a memorandum of conditional sales with the construction company on November 21, 1923, covering both the linoleum and carpets as follows:

"CONDITIONAL SALE. This Agreement Witnesseth: That the GRUNBAUM BROS. FURNITURE Co., Inc., of

Seattle, King County, Washington, party of the first part, has this day delivered to Great Northern Const. Co. Residence No. 617-18 Alaska Building, Seattle, King county, Washington, party of the second part, the following described personal property, to-wit:

| | |
|---|---|
| 668⅓ Sq. Yds. 3/16 Brown Battleship Linoleum 2.00 | $1,336.67 |
| Cementing 668⅓ Sq. Yds. Linoleum .20 | 133.67 |
| 364 Yds. 8000/704 4/4 Wilton Carpet 5.35 | 1,947.40 |
| 150 Yds. Felt Paper | 15.00 |
| 635 Yds. 1½ Felt Paper | 63.50 |
| Labor in filling channel with felt | 99.00 |
| | $3,595.24 |

"For which the party of the second part agrees to pay at the office of the party of the first part the following sum, to-wit: $3,595.24, to be paid in installments as follows:

"$800.00 cash.

"$232.94 to be paid on the 10th of each succeeding month beginning December 10, 1923. . . ."

The contract was signed by both parties. Thereafter, the carpets were delivered to the construction company at the Humphrey Apartments (not to the construction company's "Residence No. 617-18 Alaska Building, Seattle" as stated in the conditional sale contract) on December 31, 1923, January 3, 1924, and January 9, 1924, as stated by the trial court in one of its findings, and on or about January 1, 1924, as stated in another finding. The furniture company filed the conditional sale contract of November 21, 1923, with the county auditor on January 11, 1924. Thereafter, upon the architect in charge making a certificate that the building was completed, the Humphrey Investment Corporation paid to the construction company the balance due for the building. The furniture company knew that the construction company would resell the articles, or deliver them to the Humphrey Investment

Corporation under the terms of the building contract, and yet it did not notify the Humphrey Investment Corporation of the conditional sale contract, nor did the Humphrey Investment Corporation, by any other means, have actual knowledge of the conditional sale contract, nor was it aware of the filing of it, until after it had finished paying for the building. The action was against the Humphrey Investment Corporation and the tenant occupying the apartment building. The judgment was against the plaintiff, who has appealed.

First, we desire to correct a statement found in the former opinion. After noticing therein that the conditional sale contract was filed on January 11, 1924, we stated:

"The court, however, found that the carpets were delivered by appellant on January 1, 1924, which would be more than ten days before the conditional sales contract was filed for record."

Very clearly the statement, by inadvertence, contains an incorrect computation of time under Rem. Comp. Stat., § 150 [P. C. § 7435], which provides that the time within which an act is to be done shall be computed by excluding the first day and including the last, unless the last day is a holiday or Sunday, and then it also is excluded.

[1] Upon the merits, the appellant, confessing that the respondent, the Humphrey Investment Corporation, had no actual notice of the conditional sale contract, contends that the filing of it on January 11, 1924, gave constructive notice to the respondent under Rem. Comp. Stat., § 3790 [P. C. § 9767].

That section is as follows:

"That all conditional sales of personal property, or leases thereof, containing a conditional right to purchase, where the property is placed in the possession of the vendee, shall be absolute as to all *bona fide* pur-

chasers, pledgees, mortgagees, encumbrancers and subsequent creditors, whether or not such creditors have or claim a lien upon such property, unless within ten days after the taking of possession by the vendee, a memorandum of such sale, stating its terms and conditions and signed by the vendor and vendee, shall be filed in the auditor's office of the county, wherein, at the date of the vendee's taking possession of the property, the vendee resides.''

In *Kennery v. Northwestern Junk Co.,* 108 Wash. 656, 185 Pac. 636, quoting from an earlier case, we said that this statute has the elements of a recording act. It was stated that, prior to the act, unrecorded conditional bills of sale of personal property were valid in this state, not only as between the parties to it but as to incumbrancers and purchasers without notice and subsequent *bona fide* creditors of the vendee, and that, while the statute tends to prevent frauds between vendors and vendees through the instrumentality of perjury as does the statute of frauds, ''Its principal if not primary purpose is to prevent the vendor and vendee of such property from committing frauds upon third persons,'' and that it should be given a more strict construction than the statute of frauds. Nor does the statute neglect the rights of the vendor. He can protect his interest, if he comply with the statute, but he must do that, else he loses to *bona fide* purchasers, and, if he does comply with its terms, all purchasers, pledgees, mortgagees, encumbrancers and subsequent creditors of the vendee are bound, whether or not they have knowledge of the filing of the contract.

Upon the reargument of this case, counsel, in discussing the question of constructive notice, contends that ''the face of the contract need not be fair,'' that is, it need not be perfect as to the description of prop-

erty, and a number of cases are cited in support of that view. But that is not the trouble with this case. The statute makes the filing of the contract within ten days after taking possession of the vendee an essential in the protection of the vendor's rights against third parties mentioned. In this case, there is no question about the description of the property as given in the contract.

Again, counsel, upon calling attention to the clause in the statute requiring the contract to be filed within ten days after taking of possession by the vendee, insists that, as to the carpets delivered on January 3 and January 6, 1924, the appellant should prevail because of the filing of the contract on January 11, 1924. But we do not think so. Certainly respondent's rights are the same as they would be had it examined the contract and the filing of it. Had it done that, what would respondent have found? It would have found that on January 11, 1924, the appellant had filed an instrument entitled "conditional sale," reciting that on November 21, 1923, the appellant had "delivered to Great Northern Construction Company, residence No. 617-18 Alaska Building, Seattle" certain described linoleum and carpets. The linoleum had been sold and put in place, at specified prices on open account, more than a month before November 21, 1923, the date of the conditional sale contract which recited delivery of the articles on that date, while as to the carpets, although the contract of November 21, 1923, says they were delivered that day, the undisputed testimony shows that, while the quality had been agreed on, the patterns had not been furnished, nor were the carpets that were subsequently delivered actually selected and agreed upon until late in the month of December, 1923. Here a contract, the filing of which it is claimed was constructive notice, specifically stated that the goods were

delivered, not at a time within ten days, but fifty days, prior to the filing of the instrument.

But say counsel, the carpets were actually delivered within ten days before the filing of the contract, notwithstanding the recital in it to the contrary, and that thus the statute was complied with. That is, out of deference to the rights of the vendor, a purchaser from a vendee has no right to rely upon the solemn assertion of the vendor in his contract of sale and delivery of personal property filed of record by him for the purpose of giving notice as required by the statute. Such a construction of the act would be unwarranted, in our opinion, and wholly at variance with its principal, if not primary, purpose of protecting third persons from the frauds of vendors and vendees. The policy of the statute is to require truthful notice of a real transaction; not to encourage or authorize the publication of some false notice as justification for a future secret transaction to the detriment of the rights of interested third parties.

[2] Lastly, under the title of "continuing deliveries," counsel for appellant contends that "the contract should be treated as an entire contract and as one proceeding." If so, and the rule suggested were otherwise applicable, it would avail the appellant nothing, since its contract was not filed until January 11, 1924, and it recited on its face that the goods were delivered on November 21, 1923, the date the contract was entered into. Appellant cites *Anderson v. Langford,* 91 Wash. 176, 157 Pac. 456; *Mentzer v. Commercial Lumber Co.,* 110 Wash. 155, 188 Pac. 9, and *Monotype Co. v. Guie,* 134 Wash. 81, 234 Pac. 1046, involving the sales and deliveries of machines and parts or accessories of machines, and relies principally upon what is said in the *Monotype Company* case. In that case, after referring to and giving the purport of

our holding in the *Anderson* and *Mentzer* cases, it was said:

"It is true that, in each of these cases, the court somewhat stressed the point that the article purchased constituted a complete machine and that the contract was not completed until all of the parts of the machine were delivered. But we cannot think this marks a distinction between those cases and the present one. The contract here was single and entire, and, equally with the cited cases, nothing but a complete delivery of all of the property purchased could be a compliance with the contract in this respect."

This was, in part, a repetition of a preceding statement that "this was but a single contract of sale which could only be completed by a delivery of all the property." The holding in the *Monotype Company* case, therefore, was that the point stressed in each of the other two cases, that the article purchased was a complete machine and that the contract was not completed until all of the parts were delivered, did not mark any distinction between them and the *Monotype Company* case, because in the latter the contract was single and entire, and, equally with the other cases, nothing but a complete delivery of all the property purchased could be a compliance with the contract in this respect. That is, in each of those three cases the contract was entire and not severable or divisible. That marks the distinction between those cases, the doctrine of which we cannot extend, and the present one. Here the articles sold and delivered were itemized and a price fixed and agreed upon for each. The contract is severable, not entire.

In *Buckeye Buggy Co. v. Montana Stables,* 43 Wash. 49, 85 Pac. 1077, 117 Am. St. 1032, this court said:

"We believe it to be a rule, that if several articles are sold for a single and entire consideration, without any apportionment of the purchase price as between

the several articles, the contract of sale is entire and cannot be severed, except by agreement of the parties. On the other hand, if several articles are sold, and a separate price is agreed upon for each, although a single instrument of conveyance may be executed reciting a single consideration for the whole, yet, for sufficient cause shown, the contract may be rescinded as to a part and enforced as to the remainder. This is well illustrated by the case of *Miner v. Bradley*, 22 Pick. 457. In that case the plaintiff bid off a cow and four hundred pounds of hay at public auction for the sum of $17 without any apportionment of the purchase price. The court held the contract entire, but distinguished the contract from such a contract as we have suggested in the following language:

" 'Where a number of articles are bought at the same time, and a separate price agreed upon for each, although they are all included in one instrument of conveyance, yet the contract, for sufficient cause, may be rescinded as to part, and the price paid recovered back, and may be enforced as to the residue. But this cannot properly be said to be an exception to the rule; because in effect there is a separate contract for each separate article.' "

Also, see *da Ponte v. Simonian*, 127 Wash. 214, 220 Pac. 799, 222 Pac. 901.

Again, in the *Monotype Co.* case, the opinion states that, on one date, a Monotype machine and certain described accessories were purchased and, on the following day, additional accessories purchased, and that

". . . these were listed on the back of the first instrument immediately following the first list, and some changes were made in the body of the instrument. The parties attached to the instrument a further writing which is denominated a rider. This recites that it is made a part of the original contract. It recites that the equipment first described is to be shipped from the city of Spokane, Washington, and is to be accepted by the purchaser 'as is.' It further recites that the additional equipment is to be shipped

from the monotype factory at Philadelphia, and, as to it, certain warranties are made.''

In that case, the contract showed upon its face that there had been no delivery of any of the articles, but that they were to be delivered and accepted at some time in the future. In this respect, the contract upon its face spoke the truth, because it represented the real transaction or understanding of the parties. Such is not the case in the present instance, where the contract falsely recites that the articles were delivered on the date of the contract which, as we have seen, was not filed for record until fifty days thereafter. It is not fair upon its face in this respect.

Affirmed.

MAIN, TOLMAN, FULLERTON, PARKER, FRENCH, and ASKREN, JJ., concur.

HOLCOMB, J., concurs in the result.